**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **L&N AERO, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 5-22-CV-183** |
| | ) | |
| **ROSE AIRCRAFT SERVICES, INC.,** | ) | |
| **ROSE AIRCRAFT FINISHES, INC.,** | ) | |
| **and ROSE AIRCRAFT** | ) | |
| **MAINTENANCE AND REPAIR, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

NOW COMES, Plaintiff, L&N Aero, LLC, and files this Complaint against Defendants, Rose Aircraft Services, Inc., Rose Aircraft Finishes, Inc., and Rose Aircraft Maintenance and Repair, Inc., and would respectfully show the following to the Court:

## NATURE OF ACTION

1.  This is an action for breach of contract, fraud and misrepresentation, breach of implied warranty, negligence, unjust enrichment, and DTPA violations arising out of the Defendants' failure to perform in a good and workmanlike manner maintenance and re-painting services on a jet aircraft owned by Plaintiff.

## JURISDICTION, VENUE, AND APPLICABLE LAW

2.  This Court's jurisdiction is invoked pursuant to 28 U.S.C. Sec. 1332(a)(1) in that this is an action between citizens of different states where the matter in controversy exceeds $75,000, exclusive of interest and costs.

3.      Venue is proper under 28 U.S.C. Sec. 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district; or alternatively, venue is proper under 28 U.S.C. Sec, 1391(b)(3) because the Defendants are subject to the Court's personal jurisdiction with respect to this action.

4.      The Defendants' contacts with Texas establish this Court's general and/or specific personal jurisdiction over the Defendants, but choice of law principles dictate that Arkansas law governs the case.

## PARTIES

5.      Plaintiff, L&N Aero, LLC ("L&N"), is limited liability company organized under the laws of the State of Nevada with its principal place of business in Comal County, Texas.

6.      Defendants, Rose Aircraft Services, Inc. Rose Aircraft Finishes, Inc., and Rose Aircraft Maintenance and Repair, Inc. (hereinafter collectively referred to as "Rose"), are Arkansas corporations with their principal places of businesses in the State of Arkansas.

## FACTUAL BACKGROUND

7.      In 2019, L&N purchased a Hawker N409AV/N946WT jet aircraft (the "Hawker" or the "aircraft").  In acquiring the Hawker, L&N utilized the services of a jet aircraft broker and operator, Freedom Jets, which has its principal place of business in Guadalupe County, Texas.

8.      During the process of acquiring the Hawker, L&N and Freedom Jets determined that the aircraft needed to be repainted by a professional aircraft painter.

On behalf of L&N, Freedom Jets sought bids from numerous vendors, one of whom was Rose.  Rose regularly solicits business from Texas residents through the internet and by other means.  Fully aware that the owner of the aircraft was a Texas business, Rose solicited the work at issue in this case from Texas residents and sent a bid for the work to Freedom Jets in Texas.  A copy of the Rose's bid is attached as Exhibit 1.

9.      L&N and Freedom Jets decided to accept Rose's bid.  This decision was made, in part, because Rose promised a turn-around time of 22-24 working days, as reflected on Exhibit 1.   Rose's bid for the work was $73,500, and Rose required a down payment of $41,500, which L&N wired to Rose on October 25, 2019.  Representatives of L&N and Freedom Jets flew the Hawker to Rose's facility in Mena, Arkansas, on November 7, 2019, so that the work could be performed.

10.     Given Rose's commitment to complete the work within 22-24 working days, L&N and Freedom Jets expected a completion date on or about December 13, 2019, but despite Rose's promises of a quick turn-around, numerous delays in completing the work were reported to L&N and Freedom Jets.  In mid-December, Rose advised that completion would be delayed at least an additional ten days.  Despite these continued delays, L&N wired a final payment of $29,470 to Rose on December 30, 2019.  Thus, L&N paid Rose a total of $70,870, which was the amount of Rose's final invoice.

11.     On January 8, 2020, representatives of L&N and Freedom Jets arrived in Mena, Arkansas, to pick up the Hawker.  After an inspection of the aircraft, it was clear that there were numerous functional and cosmetic issues with the work.  Following forty man hours of work by Rose attempting to address the defects in the work, it became apparent that Rose could not quickly and effectively resolve the defects that it had caused.

12.     L&N and Freedom Jets determined that their only reasonable course of action was to remove the Hawker from Rose's custody.   The Hawker was immediately flown to Freedom Jets' maintenance facility in Seguin, Texas.  Freedom Jets' maintenance personnel identified dozens of defects in Rose's work.  Freedom Jets described the defects that were identified as follows:

RVSM Critical Area:  The upper static ports have paint runs, chips and a wavy surface immediately around the RVSM Critical Area.

Static Port(s) Lower Section:  The static ports themselves were painted over.

Angle of Attack Venue:  Overspray and/or no paint was found on the Angle of Attack Venue.

Elevators:     The elevators had not been removed as required by the Hawker Aircraft Maintenance Manual.   White overspray was around the "resting" position of the elevators on the vertical stabilizer.  Additionally, the stripper and old paint was not completely removed.

Rudder:  Overspray and striping termination on the leading edge in a deformed manner, which indicates that paint was applied after the rudder had been installed on the aircraft and was not removed for re-balancing as required by the Hawker's maintenance manual.

Horizontal Stabilizer:  In addition to the runs and debris found in the elevators that continue onto the horizontal stabilizer, the TKS "horns", which are critical for de-icing the aircraft in-flight appear to have been erroneously painted, and then the paint was stripped off.  These panels consist of laser-drilled almost microscopic holes that weep a special fluid that inhibits ice formation.  With the paint applied to these holes, there is no way to

properly remove the paint from these panels and they are unairworthy.  Additionally, the leading edges of these (and other) TKS panels in the horizontal stabilizer were not sealed correctly or painted with the proper black edging material.  The paint on the edging material is already breaking down.

**Main Cabin Door Seal**:  The main cabin door seal was painted over, not with just overspray, bur appears to have been masked incorrectly.  This inhibits the correct operation of the door as it decreased the pliability of the door seal.

**Fuel Grounding Points**:  The over wing fuel caps had stripper underneath them still and the grounding points had been painted over, effectively making them inoperable and causing a risk of static electricity discharge as a result of improper grounding.

**Flaps**:  Various points of overspray, improper paint stripping and removal, residue and debris was found on the wing adjacent to the flaps.

**Additional Blemishes**:  Overspray, orange peeling, and cracks can be found around all windows, wing surfaces, and light coverings.

**Main Cabin Door Exit Handle – Placarding**:  The main cabin exit door handle has overspray and the placard on its operation is not parallel to the ground.

**Climate-Controlled Air**:  The flight crew (and passengers) of the aircraft have complained of problems with the climate-controlled air in the aircraft, specifically, with regards to getting cold air.  The heat exchangers in the tail cone of the aircraft were full of what appeared to be paint dust and residue from the paint event at Rose.  This was obstructing the airflow through the heat exchanger and not allowing for it to work properly.

**Static Wicks**:  During required maintenance that was to be conducted as a result of a lightning strike, it was discovered that the static wicks installed on the aircraft had been removed, and the surfaces were not properly cleaned upon reinstallation.

13.    FAA regulations mandate that certain aircraft parts must be removed form the plane prior to painting.  In fact, the post-delivery inspections of the Hawker revealed that these parts had not been removed, but were simply painted over.  To cover up this improper procedure, Rose fabricated log records wherein it purportedly complied with the FAA regulated parts removal.

## COUNT I – BREACH OF CONTRACT

14.    Rose agreed in writing, through its solicitation bid that is Exhibit 1, that it would provide the maintenance and painting services on the Hawker in a good and workmanlike manner for a stated consideration.  L&N accepted this offer, and a contract was formed.

15.    L&N timely paid all consideration required by the contract, but Rose failed to perform the work required by the contract in a good and workmanlike manner.  Rose thus breached the contact.

16.    As a direct and proximate result of Rose's breach of contract and failure to perform, L&N has suffered damages.

## COUNT II – FRAUD AND MISREPRESENTATION

17.    Rose represented to L&N that Rose possessed the knowledge and skill to competently perform the re-painting of the Hawker.  In fact, Rose did not possess such knowledge.  To its detriment, L&N relied on Rose's false representations.

18.     Further, Rose represented to L&N that Rose would comply all FAA regulations in removing certain parts prior to painting them.  However, on information and belief, Rose fabricated work logs wherein it purportedly complied with the FAA regulated parts removal though, in fact, it had not complied.

19.     By failing to disclose that it lacked the knowledge and skill to competently perform the re-painting of the Hawker, and by fraudulently fabricating the work logs, Rose made knowing and fraudulent misrepresentations regarding a material part of the contract.

20.     As a direct and proximate result of Roses' false representations, L&N has suffered damages.

## COUNT III – BREACH OF IMPLIED WARRANTY

24.     When Rose agreed to perform the maintenance and painting work at issue, Rose impliedly warranted that it would perform the work in a good and workmanlike manner.

25.     In fact, Rose failed to perform in a good and workmanlike manner in that the work contain dozens of defects as alleged herein.  Accordingly, Rose has breached its implied warranty.

26.     As a direct and proximate result of Roses' breach of its implied warranty, L&N has suffered damages.

## COUNT IV – NEGLIEGENCE

27.     Rose had a duty to perform the maintenance and re-painting on the Hawker in manner which a reasonably prudent contractor would perform under the sane or similar circumstances.

28.     Rose breached this duty of reasonable care, and was therefore negligent, because Roses' work contained dozens of defects as alleged herein.

39.     As a direct and proximate result of Roses' negligence, L&N has suffered damages.

## COUNT V– UNJUST ENRICHMENT

40.     L&N paid Rose the sum of $70,870 in exchange for a professional paint job.

41.     L&N made all payments when due.  However, Rose failed to fulfill its commitments to L&N.

42.     Thus, Rose has been unjustly enriched to the detriment of L&N, and equity requires that Rose reimburse L&N for all amounts that it paid to Rose.

## COUNT VI – VIOLATIONS OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT

43.     The Arkansas Deceptive Trade Practices Act, Ark. Ann. Code, Title 4-88-101, *et. seq*., provides for a private cause of action for, among other things, the following:

> a.  Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services …;
>
> b.  Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade ….

Ark. Ann. Code, Title 4-88-107 (a)(1), (a)(10).

44.     The acts and omissions of Rose as alleged herein constituted violations of these provisions of the Arkansas Deceptive Trade Practices Act, and L&N relied upon them to its detriment.

45.     As a direct and proximate result of these violations of the Arkansas Deceptive Trade Practices Act, L&N has suffered damages.

## DAMAGES

46.     As a direct and proximate result of Roses' acts and omissions as alleged herein, L&N has suffered at least the following actual damages:

      a.      Costs to repair the damages caused by Rose in an amount of at least $150,000;

      b.      Lost profits of at least $30,000 due to the loss of charter revenue during the period of time when the defects were being repaired;

      c.      Loss of value to the Hawker as a result of fraudulent logs and documentation related to the removal of parts to complete the painting work.

      d.      Loss of the $70,870 paid to Rose as a result of unjust enrichment and DTPA violations;

      e.      Other incidental and consequential damages.

47.     L&N alleges that each and every fraudulent act or omission by Rose, as alleged herein, when viewed objectively from the standpoint of policymakers, involved an extreme degree of risk, considering the probability and magnitude of the physical harm to others (such as the Hawker's flight crew and passengers), and that Rose had subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others, and as such, such conduct amounts to gross negligence or malice, as those terms are defined by law, so as to give rise to an award of exemplary or punitive damages, for which L&N now pleads against Rose.  Additionally, by reason of such conduct, L&N is entitled to and therefore assert a claim of exemplary or

punitive damages in an amount sufficient to punish and deter Rose, and other corporations like them, from such conduct in the future.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

48.    L&N pleads for the recovery of pre-judgment and post-judgment interest at the maximum legal interest allowable by law.

## JURY DEMAND

49.    Pursuant to Fed.R.Civ.P. 38, L&N demands trial by jury.

## PRAYER

PREMISES CONSIDERED, L&N prays that this Court grant the following relief:

    a.  A return of all monies paid to Rose;

    b.  Actual damages;

    c.  Punitive damages;

    d.  Pre-judgment and post-judgment interest;

    e.  Reasonable costs and attorney's fees;

    f).  Such other relief as the Court deems just.

                        Respectfully submitted,


                        ___/s/ Richard L. Arnold_____
                        Richard L. Arnold
                        State Bar No. 01345450

                        Richard Arnold Law
                        100 Crescent Court, 7th Floor
                        Dallas, TX  75201
                        Tel:   214-459-2845
                        Fax:   214-613-0584
                        richard@richardarnoldlaw.com

                        ATTORNEY FOR PLAINTIFF